UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

CHARLES CRACE, II                                                                                          PLAINTIFF

V.                          Case No. 4:22-CV-01044-KGB-BBM

MARTIN O'MALLEY, Commissioner,
Social Security Administration[1]                                                                  DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to Chief United States District Judge Kristine G. Baker. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Chief Judge Baker can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

**I.   INTRODUCTION**

On September 25, 2019, Plaintiff Charles Crace, II ("Crace") filed a Title XVI application for supplemental security income with the Social Security Administration ("SSA"). (Tr. at 11). In the application, he alleged disability beginning on July 1, 2017. *Id*. Crace's claim was denied initially and on reconsideration (Tr. at 83–84, 99–100).

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration ("the Commissioner"). Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner O'Malley is automatically substituted as the Defendant.

After a hearing, an Administrative Law Judge ("ALJ") denied Crace's application on August 27, 2021. (Tr. at 24). The Appeals Council denied Crace's request for review on September 6, 2022. (Tr. at 1–5). The ALJ's decision now stands as the final decision of the Commissioner, and Crace requested judicial review.

For the reasons stated below, the Court recommends that the decision of the Commissioner be affirmed.

## II.   THE COMMISSIONER'S DECISION

Crace was 34-years-old on the application date, and he has a limited education. (Tr. at 23).[2] At Step One of the required five-step sequential evaluation process for determining whether an individual is disabled, the ALJ found that Crace had not engaged in substantial gainful activity since the application date of September 25, 2019.[3] (Tr. at 13). At Step Two, the ALJ determined that Crace has the following severe impairments: idiopathic progressive neuropathy, fibromyalgia, adjustment disorder with mixed anxiety and depressed mood, anxiety/panic disorder, and conversion disorder with sensory symptom or deficit. *Id*.

At Step Three, the ALJ determined that Crace's impairments did not meet or equal

---

[2] For supplemental security income claims, the relevant time period begins on the date the application was filed. (Tr. at 12).

[3] The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

a listed impairment.[4] (Tr. at 14–17). Before proceeding to Step Four, the ALJ determined that Crace had the residual functional capacity ("RFC") to perform work at the light exertional level, with restrictions: (1) can occasionally operate foot controls bilaterally; (2) can frequently operate hand controls bilaterally; (3) can frequently handle with the upper extremities; (4) can never operate a motor vehicle; (5) can occasionally tolerate exposure to dust, odors, and fumes, and other pulmonary irritants; (6) can perform simple, routine, and repetitive tasks but not at a production-rate pace; (7) can make simple work-related decisions, can tolerate occasional changes in the work setting, and can occasionally interact with coworkers and the public. (Tr. at 17).

At Step Four, the ALJ found that Crace had no past relevant work. (Tr. at 23). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found at Step Five, based on Crace's age, education, work experience, and RFC, that there are jobs in the national economy that Crace can perform, including positions such as photocopying machine operator, routing clerk, and marker. *Id*. Therefore, the ALJ concluded that Crace was not disabled. (Tr. at 24).

### III. DISCUSSION

#### A. Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is

---

[4] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> Our review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision. Reversal is not warranted, however, merely because substantial evidence would have supported an opposite decision.

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (internal quotations and citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

### B.  Crace's Arguments on Appeal

Crace, proceeding *pro se*, submitted two briefs, contending he should have been found disabled, and presumably claiming that the evidence supporting the ALJ's decision was less than substantial. (Doc. 17, Doc. 26). Specifically, Crace alleges that the ALJ erred in her analysis: (1) at Step Two; (2) at Step Three; (3) in determining Crace's RFC; and (4) at Step Five. The Court will address each of Crace's claims, in turn.

1.     **Step Two**

Crace acknowledges that, at Step Two, the ALJ found that he suffered from multiple severe impairments. (Tr. at 13). The ALJ also discussed other impairments, such as visual snow syndrome, asthma, and migraines, and she found these to be non-severe. (Tr. at 14). Crace asserts that these additional impairments should have also been ruled severe by the ALJ.[5] He contends that doctors did not properly treat, notate, or evaluate his conditions, that they did not believe him, and that his research proved he had conditions beyond what his doctors opined.

The ALJ, however, discussed her findings regarding Crace's impairments and why some were severe and some were not. For example, the ALJ pointed out that Crace did not require any specific treatment for visual snow syndrome and that his eye examination was normal. (Tr. at 14, 807). As for asthma, the ALJ recognized that Crace was initially diagnosed with it, but subsequent chest x-rays were negative. (Tr. at 14, 831–843, 903–904). Also, the ALJ did credit Crace's asthma symptoms by making allowances for environmental hazards in the RFC. Crace did not require treatment or take medication for migraines. No doctor placed any migraine-related restriction on him. Crace was urged to drink more water and exercise.[6] (Tr. at 807). The ALJ discussed fully the impairments

---

[5] Step Two involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. *Id*. A "severe" impairment significantly limits a claimant's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c); 416.920(c). The claimant has the burden of proving that an impairment is severe. *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

[6] *See Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009) (holding encouragement to exercise constituted evidence in support of ALJ's findings).

alleged by Crace and made proper findings, which were supported by substantial evidence, at Step Two.[7]

## 2. Step Three

Next, Crace argues that he met several listings at Step Three.[8] The first listing Crace alleges he met is 11.14 for peripheral neuropathy. To meet that listing, a claimant must show:

> A. Disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities.
> OR
> B. Marked limitation (see 11.00G2) in physical functioning (see 11.00G3a), and in one of the following:
> Understanding, remembering, or applying information (see 11.00G3b(i)); or Interacting with others (see 11.00G3b(ii)); or Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or Adapting or managing oneself (see 11.00G3b(iv)).[9]

As for the first part of 11.14, the ALJ pointed out that Crace's physical exams revealed normal gait, normal strength, and normal sensation, (Tr. at 514, 632, 706, 797–798). He did not show neck or back pain or joint swelling. (Tr. at 741). He did not require

---

[7] The ALJ did not find tinnitus and ADHD to be medically determinable impairments. (Tr. at 14). This was proper, because these conditions had not been diagnosed by an acceptable medical source, and there was no medical evidence suggesting they were functionally limiting. *Id*.

[8] The listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing any gainful activity, not just "substantial gainful activity." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (internal citations omitted). That is, if an adult is not actually working and his impairment matches or is equivalent to a listed impairment, he is presumed unable to work and is awarded benefits without a determination whether he actually can perform his own prior work or other work. *Id.*

[9] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

aggressive treatment, and no doctor placed any restrictions on him related to neuropathy. Also, the benign medical record shows that Crace's fibromyalgia diagnosis did not rise to a listing-level impairment.[10] Crace has not shown error by the ALJ at Step Three with respect to physical impairments.

There is also no support for Crace's allegation that he met any mental listings, such as 12.04, 12.06, or 12.07 for anxiety, depression, and other mental disorders. Sections 12.04, 12.06, and 12.07 require that a claimant meet certain criteria along with paragraph B or paragraph C. Paragraph B states:

> Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
> Understand, remember, or apply information (see 12.00E1).
> Interact with others (see 12.00E2).
> Concentrate, persist, or maintain pace (see 12.00E3).
> Adapt or manage oneself (see 12.00E4).

Paragraph C states:

> Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
> Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
> Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).[11]

The evidence demonstrates that Crace did not meet mental listings. He refused to take certain psychotropic medications. (Tr. at 744, 781). He did not require aggressive

---

[10] Rheumatoid and ANA testing were normal. (Tr. at 743).

[11] 20 C.F.R. Part 404, Subpt. P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

7

psychiatric care or hospitalization. He occasionally walked to the store and shopped alone. (Tr. at 273). Mental examinations showed intermittent depressed or anxious mood, but were otherwise normal (appropriate affect, normal speech, cooperative attitude). (Tr. at 683–689, 782–783, 974–1001). A psychological examiner for the SSA found that Crace would be able to perform basic work functions (Tr. at 784–785), and the RFC contained restrictions accounting for any mental limitations. Finally, Crace could perform some daily-living activities that required more than a modicum of mental acuity. (Tr. at 59–60, 270–274). Accordingly, the ALJ's analysis at Step Three was supported by substantial evidence.

### 3. ALJ's RFC Determination

Crace submits that the ALJ's RFC determination did not fully incorporate his limitations. This claim fails for a few reasons. First, the mental component of the RFC limited Crace to simple work, and no more than occasional changes in the work setting, which was consistent with his relatively normal mental-status examinations. Second, the restriction to light exertional work with environmental and postural limitations accounted for Crace's physical impairments, which, again, required no more than conservative treatment. The ALJ also noted Crace's doctor's statement that he appeared fit, healthy, and active at a March 2021 exam. (Tr. at 19, 1010–1012). And, although the ALJ considered the reviewing medical experts' opinions that Crace had no physical impairments, she credited Crace's testimony of difficulties and assigned physical restrictions in the RFC. (Tr. at 22). This shows that the ALJ considered the record as a whole, including Crace's subjective complaints; therefore, the Court finds no error in the ALJ's RFC determination.

### 4. Step Five

Finally, the Court finds Crace's argument that the ALJ erred at Step Five meritless. Without record citation, Crace states that his own research revealed there were not an adequate number of jobs in the local economy he could perform. Conversely, the VE testified that there were 173,900 jobs available nationally. (Tr. at 23–24, 66–67).[12] Again, based on his own research, Crace asserts that he cannot perform the job duties presented by the ALJ. Offhand research by a claimant, however, cannot supplant the well-supported testimony of the VE offered in response to a hypothetical question from the ALJ that includes all credible limitations.[13] The ALJ need not include limitations not supported by the record or those that a claimant fabricates from his own research. *Cf. Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting a claimant's argument "out of hand" because the claimant provided "no analysis of the relevant law or facts" regarding that issue). In sum, the ALJ properly relied upon occupational evidence and did not err at Step Five.

## IV. CONCLUSION

There is substantial evidence to support the Commissioner's decision that Crace was not disabled. The ALJ did not err at Step Two, Step Three, or Step Five, and the RFC fully incorporated Crace's credible limitations.

---

[12] The Eighth Circuit has held that "as few as 10,000 national jobs [is] a sufficient number to constitute significant national work." *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997).

[13] The Commissioner may meet his burden at Step Five by eliciting testimony from a VE in response to "a properly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies." *Porch v. Chater*, 115 F.3d 567, 572 (8th Cir. 1997). A hypothetical question need only include those impairments and limitations found credible by the ALJ. *Vandenboom*, 421 F.3d at 750.

IT IS THEREFORE RECOMMENDED:

1. That the Commissioner's decision be AFFIRMED.

2. That Judgment be entered for the Defendant.

DATED this 13th day of February, 2024.

*Benecia Moore*
_____
UNITED STATES MAGISTRATE JUDGE